UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60033-Cr-COOKE(s)(s)

UNITED STATES OF AMERICA,

vs.

WAYNE RICHARDS,

Defendant.
_____/



FILED by _____ D.C.

NOV 23 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA – MIAMI

## STIPULATED FACTUAL BASIS

WAYNE RICHARDS ("RICHARDS " or "defendant") individually and by and through his counsel, Michael Weinstein and the United States by and through the undersigned Assistant United States Attorneys agree and stipulate that the government would produce evidence of the facts recited below which are a fair and accurate summary of the events and the defendant's involvement in the conduct charged in the underlying Information and charges to which the defendant is pleading guilty.

1. In approximately mid-January 2010, RICHARDS was employed as a triage technician and a telemarketer at a pain clinic called Commercial Medical Group ("CMG"), which was owned by co-conspirators, Vincent Colangelo and Rachael Bass. CMG was located at 291 East Commercial Boulevard, Fort Lauderdale, Florida.

2. As a triage technician at CMG, RICHARDS was responsible for patient intake and handling the patient's file folder prior to their appointment with the clinic doctor. Richards recorded the patient's blood pressure, administered a urine test for the presence of illegal narcotics as well as the presence of oxycodone and recorded the results which were placed in the

patient's file folder. If the patient failed the urine examination,[1] for a fee, RICHARDS altered or allowed to be altered the test results so that the doctors could justify prescribing large amounts of oxycodone and alprazolam to the patient.

3. As a telemarketer for CMG, RICHARDS was directed by Colangelo to call a list of telephone numbers obtained by Colangelo over the Internet from website searches conducted by prospective patients in Florida and elsewhere. Colangelo directed RICHARDS to call these individuals to schedule an appointment at CMG. RICHARDS was instructed by Colangelo to tell the prospective patient that CMG's doctors typically prescribed 240/90/90 (240 tablets of 30mg oxycodone; 90 tablets of 15mg oxycodone; and 90 tablets of 2 mg alprazolam) in order to attract the maximum number of patients to the clinic.

4. On March 5, 2010, Drug Enforcement Administration undercover agent identified by the initials "MR" visited the CMG clinic and was seen by a clinic doctor who prescribed him 120 tablets of 15 milligram-strength oxycodone, a Schedule II Controlled Substance.

5. On March 5, 2010, Drug Enforcement Administration undercover agent identified by the initials "MM" visited the CMG clinic and was seen by a clinic doctor who prescribed her 90 tablets of 15 milligram-strength oxycodone, a Schedule II Controlled Substance, and 30 tablets of 1 milligram-strength alprazolam, a Schedule IV Controlled Substance.

6. On March 5, 2010, Drug Enforcement Administration undercover agent identified by the initials "KC" visited the CMG clinic and was seen by a clinic doctor who prescribed him

---

[1] A patient would "fail" a urine test if he or she tested positive for illicit drugs such as heroin, cocaine, methamphetamine, marijuana, or tested negative for opioids or benzodiazepines (which would indicate that the patient might be "opioid naive" or intolerant of high dosages of oxycodone and alprazolam or that the patient might be otherwise diverting the prescription drugs he or she was receiving.

60 tablets of 15 milligram-strength oxycodone, a Schedule II Controlled Substance.

7. On April 2, 2010, Drug Enforcement Administration undercover agent identified by the initials "KC" visited the CMG clinic and was seen by a clinic doctor who prescribed him 100 tablets of 30 milligram-strength oxycodone, a Schedule II Controlled Substance, and 30 tablets of 2 milligram-strength alprazolam, a Schedule IV Controlled Substance.

8. On April 2, 2010, Drug Enforcement Administration undercover agent identified by the initials "MR" visited the CMG clinic and was seen by a clinic doctor who prescribed him 120 tablets of 15 milligram-strength oxycodone, a Schedule II Controlled Substance.

9. On April 5, 2010, Drug Enforcement Administration undercover agent identified by the initials "MM" visited the CMG clinic and was seen by a clinic doctor who prescribed her 100 tablets of 30 milligram oxycodone, a Schedule II Controlled Substance, and 30 tablets of 2 milligram alprazolam, a Schedule IV Controlled Substance.

10. RICHARDS knowingly and intentionally aided and abetted the distribution of quantities of controlled substances, primarily oxycodone, a Schedule II Controlled Substance and alprazolam, a Schedule IV Controlled Substance, not for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Section 841(a)(1) and 18 United States Code, Section 2.

11. The Government's expert reviewed the patient files for the undercover transactions set forth in Paragraphs 4 through 9 above, and concluded that the prescriptions respectively issued were not for a legitimate medical purpose and not within the standard of care in the course of professional practice of pain management.

12. The defendant and his attorney acknowledge by their signatures below that they have reviewed the stipulated facts with each other and agree with the accuracy of the facts as recited hereinabove.

Date: 11/18/11

By: [signature]
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SCOTT H. BEHNKE
Assistant United States Attorney

Date: _____

By: _____
GREGORY E. TORTELLA
Special Attorney, U.S. Dept. Of Justice

Date: 11/18/11

By: [signature]
MICHAEL WEINSTEIN
Attorney for the Defendant

Date: 11/18/11

By: [signature]
WAYNE RICHARDS
Defendant